UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v. -

ERIN FOLEY, TED ALBIN, and
ALAN SWISS,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

24mj08032WM

**SEALED INDICTMENT**

S1 23 Cr. 664 (JGK)

### COUNT ONE

(Conspiracy to Commit Health Care Fraud and Wire Fraud)

The Grand Jury charges:

#### OVERVIEW

1. At all times relevant to this Indictment, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, engaged in a scheme to buy and sell fraudulent written orders (also known as "prescriptions") for durable medical equipment ("DME"), and to assist others in buying and selling such orders, in an effort to fraudulently bill the Medicare Program ("Medicare") for more than approximately $25 million in DME, and to cause more than $9 million to be paid out on such fraudulent claims.

#### BACKGROUND

#### The Medicare Program

2. At all times relevant to this Indictment:

    a. Medicare has been a federal health care program providing benefits to persons who are over the age of 65 or who are disabled. Medicare is administered by the Centers for

Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

      b. Individuals who receive Medicare benefits are referred to as "Medicare beneficiaries."

      c. Medicare is a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b(f), and a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

      d. Medicare is divided into four parts, which provide medical insurance for different types of services. Two of those four parts are Medicare Part B ("Part B") and Medicare Part C ("Part C," also known as Medicare Advantage program).

      e. Among other things, Part B specifically covers medically necessary physician office services and outpatient care, including DME. DME includes prosthetics, orthotics, and supplies, such as off-the-shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively "braces"), when such supplies are ordered by licensed medical doctors or other qualified health care providers.

      f. Among other things, Part C provides a Medicare beneficiary with the option to receive Medicare benefits through a private health insurance company approved by Medicare, rather than directly through Medicare. Part C provides Medicare beneficiaries with all the services provided under Medicare Part B (except hospice), as well as some supplemental benefits. In exchange for managing these beneficiaries' Medicare coverage, these private insurers are entitled to receive reimbursement from Medicare on a "capitation" basis, that is, based on the number of beneficiaries insured by that private insurer, subject to certain adjustments based on the beneficiaries' age, gender, and health status.

    g. DME supply companies, physicians, and other healthcare providers that provide DME and other products and services to Medicare beneficiaries are referred to as Medicare "providers."

Durable Medical Equipment

  3.  At all times relevant to this Indictment:

    a. Part B and Part C of Medicare has covered the costs of DME only if, among other requirements, such items and services are reasonable, documented, and medically necessary for the treatment or diagnosis of the patient's illness or injury, as defined by applicable Medicare regulations, and were actually provided as represented to Medicare.

    b. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. For certain DME products, Medicare promulgated additional requirements that a DME order was required to meet for an order to be considered "reasonable and necessary." For example, for OTS knee braces billed to Medicare under the Healthcare Common Procedures Coding System ("HCPCS") Code L1851, an order would be deemed "not reasonable and necessary," and reimbursement would be denied, unless the ordering physician documented the beneficiary's knee instability using an objective description of joint laxity determined through a physical examination of the beneficiary.

    c. Medicare will not reimburse claims for services procured through kickbacks and bribes. Such claims are deemed false and fraudulent because they violate Medicare laws, regulations, and program instructions, as well as violating federal criminal law. For example, where a DME order is procured through the payment of a kickback in violation of the Anti-Kickback Statute—set forth at Title 42 United States Code, Section 1320a-7b—a claim to Medicare for reimbursement for that order is fraudulent and will not be reimbursed by Medicare.

By implementing these restrictions, Medicare aims to preserve its resources, which are largely funded by United States taxpayers, for those elderly and other qualifying beneficiaries who have a genuine need for medical services.

## Telemedicine

4. At all times relevant to this Indictment,

    a. Telemedicine has provided a means of connecting patients to doctors by using telecommunications technology, such as the internet or the telephone, to interact with a patient.

    b. Medicare Part B and Part C covered expenses for specified telehealth services if certain requirements were met. These requirements included that (i) the beneficiary was located in a rural or health professional shortage area; (ii) services were delivered via an interactive audio and video telecommunications system; and (iii) the beneficiary was at a practitioner's office or a specified medical facility — not at a beneficiary's home — during the telehealth consultation with a remote practitioner.

## Relevant Persons and Entities

5. At all times relevant to this Indictment, Grapevine Professional Services, Inc. ("Grapevine") was a medical billing company, controlled and operated by ERIN FOLEY and TED ALBIN, the defendants. FOLEY and ALBIN caused Grapevine to obtain orders and prescriptions for medical goods and services, including for DME, and to use those orders and prescriptions to bill medical insurance providers, including Medicare, on behalf of Grapevine clients, including DME supply companies. In corporate registration documents, Grapevine was described as being owned by ALBIN, but in fact Grapevine was controlled and operated by FOLEY and ALBIN together.

6.	At all times relevant to this Indictment, Liberty Bell Medical Supply LLC ("Liberty Bell Medical"), Skye Medical Equipment, Inc. ("Skye Medical"), Priority Medical Supply, LLC ("Priority Medical"), and A&E Medical, Inc. ("A&E Medical") operated as DME supply companies, that is, as companies purporting to supply medically necessary DME and other medical supplies to Medicare beneficiaries, and then filing claims with Medicare and other insurers funded by Medicare, to pay for those DME supplies. Although their legal ownership and Medicare registration documents varied, Liberty Bell Medical, Skye Medical, and Priority Medical were each, in fact, controlled and operated by ERIN FOLEY and TED ALBIN, the defendants, while A&E Medical was controlled by ALAN SWISS, the defendant, with assistance from FOLEY and ALBIN.

7.	At all times relevant to this Indictment, ERIN FOLEY and TED ALBIN, the defendants, who were brother and sister, together controlled and operated Grapevine, Liberty Bell, Skye, and Priority.

8.	At all times relevant to this Indictment, ALAN SWISS, the defendant, together with co-conspirators not named herein, controlled and operated various companies and offices engaged in defrauding Medicare. SWISS controlled and operated at least two DME supply companies—Modern Medical Equipment, Inc. ("Modern Medical") and A&E Medical, Inc. ("A&E Medical"). SWISS also controlled and operated at least one call center—Tropical Medical Marketing, Inc. ("Tropical Marketing")—from which employees placed calls in search of Medicare beneficiaries who were eligible to receive DME paid for by Medicare.

## THE HEALTH CARE FRAUD SCHEME AND CONSPIRACY

9. From at least in or about 2016 through at least in or about 2021, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, together with others known and unknown, participated in a scheme and conspiracy to defraud Medicare. In furtherance of that scheme, FOLEY and ALBIN controlled and operated Grapevine, a medical billing company, which they used to submit fraudulent claims for Medicare reimbursement for DME. FOLEY and ALBIN caused Grapevine to submit such claims on behalf of Grapevine customers, which were DME supply companies that had unlawfully purchased the DME orders used to support such claims. Such DME supply companies included companies controlled and operated by FOLEY, ALBIN and SWISS—including Liberty Bell Medical, Skye Medical, Priority Medical, Modern Medical, and A&E Medical—and companies controlled and operated by other Grapevine customers. At least some of these fraudulent prescriptions were created using the names and personal identifying information of Medicare beneficiaries and the professional identifying information of doctors and other health-care providers enrolled in the Medicare program, without the authorization of at least some of those beneficiaries and providers, without regard to medical necessity, and without a required medical examination.

10. In addition to using Grapevine to process fraudulent Medicare DME claims on behalf of customers, ERIN FOLEY and TED ALBIN, the defendants, also acted as brokers for unlawful purchases and sales of DME orders. Among other things, FOLEY and ALBIN introduced Grapevine customers who sought unlawfully to buy DME orders to persons who sought unlawfully to sell such DME orders, with the understanding that these Grapevine customers would submit the newly purchased DME orders to Grapevine, so that Grapevine could bill Medicare. FOLEY and ALBIN thus benefitted through Grapevine's increased billing from

the submission of such Medicare claims. In addition, FOLEY and ALBIN received financial kickbacks for making such introductions of buyers and sellers.

11. From in or about 2016 through in or about April 2019, ALAN SWISS, the defendant, together with others known and unknown, controlled and operated at least one call center—Tropical Medical—from which numerous individuals placed calls in order to search for Medicare beneficiaries who were eligible to receive DME paid for by Medicare. SWISS caused DME "leads" to be prepared in the names of those Medicare beneficiaries, using the personal identifying information of the Medicare beneficiaries without the authorization of those beneficiaries and providers, without regard to medical necessity, and without a required medical examination.

    a. After generating these leads through Tropical Marketing, SWISS then: (a) unlawfully sold many of these leads to co-conspirators not named herein; and (b) used many of these leads to submit fraudulent Medicare claims on behalf of his own DME supply companies—including Modern Medical and A&E Medical.

    b. Through DME supply companies that SWISS controlled and operated—including Modern Medical and A&E Medical—SWISS unlawfully purchased the purported signatures of medical providers on DME orders. SWISS purchased at least some of these purported signatures without the authorization of those beneficiaries and providers, without regard to medical necessity, and without a required medical examination.

    c. In cooperation with ERIN FOLEY and TED ALBIN, the defendants, SWISS caused such DME orders to be processed through Grapevine and caused claims to be submitted to Medicare, seeking payments of more than approximately $17 million.

12. ERIN FOLEY and TED ALBIN, the defendants, also oversaw the operation of the DME supply companies that they controlled, and caused Liberty Bell Medical, Skye Medical, Priority Medical, and A&E Medical to unlawfully purchase orders and prescriptions for medical goods and services, including for DME, and to use those orders and prescriptions as a basis to submit additional fraudulent claims through Grapevine to Medicare.

### Means and Methods of the Conspiracy

13. From in or about 2016 through in or about 2021, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, unlawfully purchased DME orders, without regard to medical necessity, through DME supply companies that they owned and controlled in whole and in part, including Liberty Bell Medical, Skye Medical, Priority Medical, Modern Medical, and A&E Medical. FOLEY, ALBIN, and SWISS used those unlawfully purchased DME orders to file fraudulent claims to Medicare and to other insurers reimbursed by Medicare under Part C, on behalf of those DME supply companies.

14. From at least in or about 2017 through in or about 2021, ALAN SWISS, the defendant, and co-conspirators not named herein who were also customers of Grapevine, unlawfully purchased DME orders, and then submitted those orders to Grapevine and to ERIN FOLEY and TED ALBIN, the defendants, with requests that such DME orders be used as the basis for submitting reimbursement claims to Medicare and to other insurers reimbursed by Medicare under Part C.

15. From at least in or about 2017 through in or about 2021, ERIN FOLEY and TED ALBIN, the defendants, received from ALAN SWISS, the defendant, and from other Grapevine customers who also operated DME supply companies, requests to submit claims to Medicare and to other insurers reimbursed by Medicare under Part C, based upon DME orders that were

attached to those requests and that had—as FOLEY, ALBIN, and SWISS well knew—been unlawfully purchased. FOLEY and ALBIN then used those DME orders as the basis for submitting insurance claims to Medicare and to other insurers reimbursed by Medicare under Part C.

16. From in or about 2018 through in or about 2021, ERIN FOLEY and TED ALBIN, the defendants, used Grapevine to process Medicare DME claims based on orders that had been unlawfully bought and obtained through kickbacks. FOLEY and ALBIN caused Grapevine to submit at least $25 million in fraudulent DME claims to Medicare and other insurers who were reimbursed by Medicare under Part C, and caused more than $9 million to be paid out on such claims. FOLEY and ALBIN caused Grapevine to submit such claims both on behalf of DME supply companies that were owned and controlled by FOLEY and ALBIN and on behalf of DME supply companies that were owned and controlled by co-conspirators not named herein.

17. From at least in or about 2018 through at least in or about 2020, ERIN FOLEY and TED ALBIN, the defendants, introduced Grapevine customers—that is, DME supply companies controlled by co-conspirators not named herein who sought to unlawfully buy DME orders—to other co-conspirators not named herein, who unlawfully sold DME orders to such Grapevine customers. In so doing, FOLEY and ALBIN acted as brokers for these purchases and sales of DME orders. In return for such introductions, FOLEY and ALBIN received financial kickbacks and increased future billing business resulting from such introductions.

18. From at least in or about 2018 through at least in or about 2021, in addition to introducing such co-conspirator buyers of DME orders to such co-conspirator sellers of DME orders as described in the preceding paragraph, ERIN FOLEY and TED ALBIN, the defendants, along with Grapevine employees under their direction, oversaw the ongoing relationship between

such buyers—who remained Grapevine customers—and such sellers. Such oversight included, for example, tracking the numbers of DME orders that buyers had paid for and the numbers of DME orders such buyers were owed, and communicating such information to both buyers and sellers of such DME orders. In order to conceal the criminal nature of these communications, the participants often falsely referred to DME orders as "leads" or as "marketing."

## STATUTORY ALLEGATIONS

19. From in or about 2016 through at least in or about 2021, in the Southern District of New York and elsewhere, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, together with others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud and health care fraud, in violation of Title 18, United States Code, Sections 1343, and 1347.

20. It was a part and an object of the conspiracy that ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, together with others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, FOLEY, ALBIN, and SWISS engaged in a scheme to buy and sell fraudulently obtained DME prescriptions, and to use those prescriptions to cause Medicare to pay for fraudulent claims filed by Grapevine on behalf of DME supply companies, including DME supply companies controlled and operated by FOLEY, ALBIN, and SWISS, and sent and received interstate wires to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

21.     It was a further part and an object of the conspiracy that ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, together with others known and unknown, knowingly and willfully would and did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, as that term is defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, to wit, FOLEY, ALBIN and SWISS engaged in a scheme to buy and sell fraudulently obtained DME prescriptions, and to use those prescriptions to cause Medicare to pay for fraudulent claims filed by Grapevine on behalf of DME supply companies, including DME supply companies controlled and operated by FOLEY, ALBIN, and SWISS, in violation of Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
(Health Care Fraud)

The Grand Jury further charges:

22.     The allegations set forth in paragraphs 1 through 18 are incorporated by reference as if set forth fully herein.

23.     From in or about 2016 through at least in or about 2021, in the Southern District of New York and elsewhere, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program, as that term is defined in Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit

program, in connection with the delivery of and payment for health care benefits, items, and services, to wit, FOLEY, ALBIN, and SWISS engaged in a scheme to buy and sell fraudulently obtained DME prescriptions, and to use those prescriptions to cause Medicare to pay for fraudulent claims filed by Grapevine on behalf of DME supply companies, including DME supply companies controlled and operated by FOLEY, ALBIN, and SWISS.

(Title 18, United States Code, Sections 1347 and 2.)

### COUNT THREE
(Wire Fraud)

The Grand Jury further charges:

24. The allegations set forth in paragraphs 1 through 18 are incorporated by reference as if set forth fully herein.

25. From in or about 2016 through at least in or about 2021, in the Southern District of New York and elsewhere, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, FOLEY, ALBIN, and SWISS engaged in a scheme to buy and sell fraudulently obtained DME prescriptions, and to use those prescriptions to cause Medicare to pay for fraudulent claims filed by Grapevine on behalf of DME supply companies, including DME supply companies controlled and operated by FOLEY, ALBIN, and SWISS, and sent and received, and caused others to send and receive, emails and other interstate wires to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
(Conspiracy to Violate the Anti-Kickback Statute)

The Grand Jury further charges:

26. The allegations set forth in paragraphs 1 through 18 are incorporated by reference as if set forth fully herein.

27. From in or about 2016 through 2021, in the Southern District of New York and elsewhere, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, to violate the Anti-Kickback Statute, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(B) and 1320a-7b(b)(2)(B).

28. It was a part and object of the conspiracy that ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, and others known and unknown, would and did willfully and knowingly solicit and receive remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, from one and more persons, in return for purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(B).

29. It was a further part and object of the conspiracy that ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, and others known and unknown, would and did willfully and knowingly offer and pay remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, to one and more persons, to

induce such persons to purchase, lease, order, and arrange for and to recommend the purchasing, leasing, and ordering of a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Sections 1320a-7b(b)(2)(B).

## Overt Acts

30. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

 a. In or about August 2016, ALAN SWISS, the defendant, established Tropical Marketing.

 b. In or about December 2018, SWISS caused Tropical Marketing to transmit multiple wire transfers totaling more than $65,000 to a company that supplied Tropical Marketing with purported signatures of medical providers for DME orders.

 c. In or about March 2019, SWISS caused Tropical Marketing to transmit multiple wire transfers totaling more than $40,000, and caused A&E Medical to transmit multiple wire transfers totaling more than $11,000, to a company that supplied Tropical Marketing and A&E Medical with purported signatures of medical providers for DME orders.

 d. On or about August 28, 2019, a Grapevine employee sent an email to a DME supply company in New York, New York (the "Manhattan DME Supplier") and to two persons who ran a business ("Seller Company-1") that repeatedly sold DME orders to the Manhattan DME Supplier, copying ERIN FOLEY and TED ALBIN, the defendants, stating, in substance and in part, that the Manhattan DME Supplier had "paid for 65 good leads with the an [*sic*] agreement to replace any NOGO leads" but had received only 45 good leads, and that Seller

Company-1 "still needs to replace 20 leads," which referred to DME orders.

      e.    On or about December 27, 2019, FOLEY sent an email to the Manhattan DME Supplier, copying two other recipients who regularly sold DME orders, introducing the owner of the Manhattan DME Supplier to one of the other recipients of that email ("Seller-1"). The email informed the owner of the Manhattan DME Supplier that Seller-1 "has orthotic marketing that you may be interested in." In truth and in fact, "marketing" was a code phrase that FOLEY and her co-conspirators regularly used to refer to DME orders.

      f.    On or about December 27, 2019, FOLEY sent an electronic text message to Seller-1, stating in substance and in part that FOLEY had "just introduced you" to a person who would need "leads," adding, "My DME is called Priority, can you send me 1-2 a day please?"

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATIONS

31. As a result of committing the health care fraud offenses charged in Counts One, Two, and Four of this Indictment, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts One, Two, and Four of this Indictment, including but not limited to a sum of United States currency representing the amount of proceeds obtained as a result of the offenses.

32. As a result of committing the wire fraud offenses charged in Counts One and Three of this Indictment, ERIN FOLEY, TED ALBIN, and ALAN SWISS, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Asset Provision

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853(p); and
Title 28, United States Code, Section 2461(c).)

*[signature]*
FOREPERSON
1/29/24

*[signature]* Damian Williams
DAMIAN WILLIAMS
United States Attorney